UNITED STATES DISTRICT COURT

FOR THE

WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BDC TREE SERVICE L L C, | § § § § |
| *Plaintiff* | § § |
| | § CIVIL ACTION NO : |
| v. | § § |
| | § |
| DEERE & COMPANY, INC. and | § |
| W. L. DOGGETT, LLC, d/b/a DOGGETT | § |
| MACHINERY SERVICES, | § § |
| | § JURY TRIAL REQUESTED |
| *Defendants* | § |

## COMPLAINT

### I.   Parties

1. Plaintiff, BDC Tree Service LLC, now and has been at all times material hereto a Louisiana limited liability company organized under the laws of the State of Louisiana, with its domicile address at 586 Gene Gunter Road, Deville, LA 71328; further, its officers are Cecil W. Zito and Kate A. Zito of the same address, they are the sole members of the LLC and at all times pertinent hereto, and presently, citizens of and domiciliaries of Rapides Parish, Louisiana.

2. Defendant, **DEERE & COMPANY, INC.**, (hereinafter "Deere"), is a corporation organized under the laws of the State of Delaware, domiciled at 1209 Orange Street, Wilmington, Delaware 19801, whose principal place of business is 1 John Deere Place, Moline, Illinois 61265, authorized to do and doing business in the State of Louisiana, whose agent for service of process is C T Corporation System, 3867 Plaza Tower, Baton Rouge, LA 70816.

3. Defendant, **W. L. DOGGETT, LLC**, **d/b/a DOGGETT MACHINERY SERVICES,** (hereinafter "Doggett"), is a Texas limited liability company domiciled and with its principal place of business located at 9111 North Freeway, Houston, Texas 77037, authorized to do business in the State of Louisiana, and whose agent for service of process is C T Corporation System, 3867 Plaza Tower, Baton Rouge, LA 70816; the company has one officer, director, general partner, or manager, whose name is WM. Leslie Doggett, who is a citizen of the State of Texas.

## II. Jurisdiction

4. This Court has jurisdiction over this controversy or cause of action because the plaintiff and the defendants are completely diverse in citizenship, as shown above. Further, the amount in controversy, without interest and costs, exceeds the sum or value specified by 28 U.S.C. § 1332, or $75,000.00, inasmuch as:

   a. This is a suit for the rescission of the sale of a new track loader, mulching head, and accouterments, under Louisiana's redhibition laws, where the purchase price was $118,292.00

   b. The complainant has entered into a contingency fee contract of at least 30% with undersigned counsel, with expected attorney's fees exceeding $30,000.00;

   c. Any value of the plaintiff's use of the track loader, which would otherwise be credited against the amounts set forth above, has been overridden by the inconveniences associated with and interruptions in use associated with the defective nature of the track loader and the defendant's constant attempts to repair.

## III. Venue

5. Venue is proper in this district under 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated in this district.

### IV. Conditions Precedent

6. All conditions precedent have been performed or have occurred.

### V. Facts

#### A. The Transaction

7. On or about May 31, 2017, Plaintiff purchased a new John Deere 333G compact track loader, skid steer (hereinafter sometimes "track loader"), mulching head, and accouterments with factory options, from Doggett in Alexandria, Louisiana. The track loader, mulching head, and accouterments were purchased primarily for Plaintiff's use in the business of land development and land clearing in or near Rapides Parish, Louisiana. The sales contract was presented to Plaintiff at the Doggett dealership and was executed at the dealership, and simultaneously therewith, a finance contract was entered into which has caused and will cause Plaintiff to incur finance charges.

8. The sales price of the track loader, mulching head, and accouterments was $118,292.00, excluding sales taxes, finance charges, and other expenses surrounding the sale. The total cost of the loader and attachment, excluding finance charges will be substantially over that amount.

9. Deere was the manufacturer and warrantor of the track loader, mulching head, and accouterments.

#### B. Implied Warranties

10. As a result of the sale of the track loader, mulching head, and accouterments to Plaintiff, an implied warranty of merchantability arose in the transaction which included the guarantee that the track loader would be substantially free from defects, that excess repairs would

not be needed, and that the loader was fit for the ordinary purpose for which such machines are purchased.

11. Subsequent to the sale, an implied warranty arose in connection with the repairs performed by the Defendant Deere through its various dealerships, and its dealership, Doggett. Specifically, the Defendants impliedly warranted that the repair work had been performed in a good and workmanlike manner.

### C. Express Warranties

12. In addition to the implied warranties that arose in the transaction, certain representations and express warranties were made, including, that any malfunction in the loader occurring during a specified warranty period resulting from defects in material or workmanship would be repaired, and that repair work on the loader had, in fact, repaired the defects.

13. Plaintiff's purchase of the loader was accompanied by express warranties offered by Deere and extending to Plaintiff. These warranties were part of the basis of the bargain of Plaintiff's contract for purchase of the loader.

14. The basic warranty covered any repairs or replacements needed during the warranty period due to defects in factory materials or workmanship. Any required adjustments would also be made during the basic coverage period. All warranty repairs and adjustments, including parts and labor, were to be made at no charge. Additional warranties were set forth in both defendants' warranty booklet and owners manual.

### D. Actionable Conduct

15. Prior to the sale, it was represented to the Plaintiff by Doggett, that the machine was sufficient and adequate for the type of work Plaintiff intended to use the loader for, and that it would

fit and be compatible with various mulching heads needed by Plaintiff to complete the work. In fact, the mulching heads available, recommended, and sold by Doggett were not able to be used with the loader adequately enough to avoid repeat repairs and overheating.

16. In fact, when Plaintiff took possession, the track loader, mulching head, and accouterments were defective in materials and workmanship, with such defects being discovered within the warranty periods, and with repairs having been done by authorized repair facilities within one year of the date of filing herein. Within the first few months after purchase, Plaintiff began experiencing defective conditions with the track loader, mulching head, and accouterments. Many defective conditions have occurred since purchase, some of which were repaired, and some of which include repair within one year of the date of filing suit herein, but which were experienced while plaintiff was using the loader in an ordinary manner, including, but not limited to:

    a.    The hydraulics for attached mulching heads repeatedly heating up to the pont of needing repairs or to the point of complete failure;

    b.    Inability to mulch tracts of land up to and as large as 10 acres, as required for land clearing and tree removals services offered by the Plaintiff in its business;

    c.    Failure of the track loader, mulching head, and accouterments, to operate as expected and as represented by the defendants;

    d.    Excessive breakdowns resulting in excessive repairs which have caused repeated, expensive, and frequent interruptions in the use of the track loader, mulching head, and accouterments.

17. Since the purchase, Plaintiff has had authorized warranty service by defendant Doggett, as Deere's authorized service dealer, on numerous occasions from the date of its purchase; the track loader, mulching head, and accouterments continue to this day to exhibit some or all of the non-conformities described herein and in fact exhibits malfunctions to the extent that the track

loader, mulching head, and accouterments are either completely useless to the Plaintiff or so inconvenient to use that Plaintiff would not have purchased them had its owner known of the defects prior to the sale. .

18. The repairs, repeat repairs, and reappearance of the defects/symptoms, and the incompatibility with the mulching head, show that the loader was manufactured with some physical imperfection or deformity, or it lacks necessary components or a certain level of quality.

19. As the distributor and warrantor, Deere is conclusively presumed to know prior to the sale that the loader contained the defects described above that would cause the loader fail to operate in the intended manner during normal use.

20. The defects experienced by Plaintiff with the loader and attachment substantially impaired its use, value and safety.

21. Plaintiff directly notified Deere and Doggett of the defective conditions of the loader on numerous occasions.

**Count 1: Violations of the Louisiana Redhibition Laws**

22. Plaintiff re-alleges and incorporates by reference herein each and every allegation set forth in the preceding paragraphs.

23. The loader is a "thing" under La. Civil Code Articles 2520, et seq.

24. "Deere", as manufacturer, distributor, and warrantor is a "seller" under La. Civil Code Articles 2520, et seq.

25. Plaintiff is a "buyer" under in La. Civil Code Articles 2520, et seq.

26. "Deere" and "Doggett" are both a seller with actual, presumptive, and/or imputed knowledge of the defects in the loader, mulching head, and accouterments sold to the plaintiff in violation of La. Civil Code Article 2545.

27. The defects described in the loader vehicle meet the definition of a redhibitory defect or defects as defined in La. Civil Code Articles 2520, et seq.

28. Plaintiff has provided the Defendants notice and sufficient opportunity to repair the defective loader.

29. Plaintiff has performed each and every duty required of it under Louisiana Redhibition Laws, except as may have been excused or prevented by the conduct of the Defendant, as herein alleged.

30. The hidden defects in the loader, mulching head, and accouterments existed at the time of sale, but were not discovered until after delivery. Multiple defects existed in the loader, mulching head, and accouterments, even though some are minor or have been repaired. The loader, mulching head, and accouterments are not usable or their use is so inconvenient that neither Plaintiff nor a reasonable prudent buyer would have purchased the loader, mulching head, and accouterments had they known of the defects prior to the sale.

31. Furthermore, Defendants failed to perform the repair work in a good and workmanlike manner through its dealership. In any event, defendant Deere is independently liable for defects that existed in the manufacture of products imported, warranted, and distributed by it. This conduct by Defendants constitutes a breach of the implied warranties under Louisiana law, and entitles Plaintiff to a rescission of the sale, return of the purchase price, plus all collateral costs of the sale, finance charges, insurance premiums, and out of pocket expenses.

32. Under Louisiana Redhibition laws, Plaintiff is entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiff prevails. As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect its rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Fred A. Pharis. Plaintiff has incurred and continues to incur legal fees, costs and expenses in connection therewith.

**Count 2: Negligent Repair**

33. Plaintiff re-alleges and incorporates herein by reference each and every allegation set forth in the preceding paragraphs.

34. On numerous occasions after the sale, Plaintiff delivered the loader, mulching head, and accouterments to Doggett for repairs of the defective conditions covered under the express and implied warranties set forth herein above.

35. On each such occasion, Plaintiff is informed and believe, and thereupon alleges, that Defendants attempted the repairs of the loader, mulching head, and accouterments pursuant to their obligations under the express and implied warranties. Defendant owes a duty of care to Plaintiff to perform those repairs on the loader, mulching head, and accouterments in a good and workmanlike manner within a reasonable time. Further, as a participant, seller, and marketer of Defendant Deere's products and its participation in Defendant Deere's warranty system, Defendant Doggett has a "high duty" to detect and correct defects when consumers such as the plaintiff submits to the system, as required.

36. Defendant Doggett's attempted repairs of Plaintiff's the loader, mulching head, and accouterments as Deere's authorized repair facility were done so negligently, carelessly, and

recklessly as to substantially impair the the loader, mulching head, and accouterments' use, value, and safety in its operation and use. At no time did any repair attempt on Plaintiff's the loader, mulching head, and accouterments fully and completely repair the machine, nor were many of the defective conditions fixed or significantly improved by the repair attempts. Nonetheless, each time Plaintiff picked up the machine after the Defendant Doggett's repair attempts, it was represented to Plaintiff that the repairs were complete, and Plaintiff relied upon these statements by Defendant Doggett.

37.     As a direct and proximate result of Defendant's negligent failure to repair the loader, mulching head, and accouterments within a reasonable time or within a reasonable number of attempts, Plaintiff was unable to use the loader, mulching head, and accouterments for weeks at a time. As a further direct and proximate result of Defendant's failure to repair the track loader, mulching head, and accouterments in a timely and workmanlike fashion, Plaintiff was forced repeatedly to take the loader, mulching head, and accouterments in for further repair attempts and to leave it for periods of time at great inconvenience to Plaintiff.

38.     The damages Plaintiff has suffered as a direct and proximate result of Defendants' negligence exceed $75,000.00.

## VI.     Damages

39.     The conduct described above has been and is a producing and proximate cause of damages to Plaintiff.

40.     The track loader, mulching head, and accouterments have been out of use and/or service by reason of defective performance and/or repair for excessive periods of time; Plaintiff shows that said lack of use of the equipment has caused lost profits and/or income to Plaintiff and has caused extra expenses because of the track loader, mulching head, and accouterments being

unavailable; therefore, Plaintiff was unable to perform the jobs its could have had it not been for the defective nature of the track loader, mulching head, and accouterments.

41. Plaintiff's damages include rescission of the sale including all collateral costs at the time of the sale, loss of the purchase price, any and all finance charges, insurance premiums, maintenance costs, repair costs, economic loss and/or lost profits, together with applicable penalties and attorney fees allowed by law, and with legal interest upon the entire sums awarded from the date of sale or from judicial demand or from judgment, until paid, and for all costs of these proceedings.

### VII. Request for Rescission

42. Plaintiff seeks the remedy of rescission of the sales contract, with the track loader, mulching head, and accouterments, which would not have been purchased individually, but only as a set.

43. Plaintiff revokes its acceptance of the track loader, mulching head, and accouterments for the reason that its defects substantially impair its use, value, and safety to Plaintiff, make the track loader, mulching head, and accouterments either useless or its use so inconvenient that no reasonable person would have purchased the track loader, mulching head, and accouterments, had he known of the defects prior to the sale, and the acceptance was based on Plaintiff's reasonable reliance on the false representations and warranties of the Defendants that the defects in the loader would be repaired. Accordingly, Plaintiff seeks a cancellation of the sales contract and an order of the court restoring to Plaintiff the money obtained by Defendant as a result of the false representations and breaches of express and implied warranties as set forth above. Plaintiff also seeks cancellation of the debt and offers to return the loader to the Defendant.

## VIII. Attorney Fees and Costs

44. Plaintiff is entitled to recover a sum equal to the aggregate amount of costs and expenses, including attorney's fees, if Plaintiff prevails. As a proximate result of Defendants' misconduct as alleged herein, and in an effort to protect its rights and to enforce the terms of the agreement as more particularly set forth above, it has become necessary for Plaintiff to employ the legal services of Fred A. Pharis. Plaintiff has incurred and continue to incur legal fees, costs and expenses in connection therewith.

## IX. Prayer for Relief

45. For these reasons, Plaintiff prays for judgment against the Defendants for the following:

    a.    For general, special and actual damages according to proof at trial;

    b.    Rescinding the sale of the track loader, mulching head, and accouterments and returning to Plaintiff the purchase price including all collateral costs at the time of the sale, any and all finance charges, insurance premiums, maintenance costs, repair costs, and damages;

    c.    For incidental and consequential damages according to proof at trial;

    d.    Out of pocket damages for expenditures related to any cost of repairs, deductibles and transportation charges;

    e.    Any diminution in value of the loader attributable to the defects;

    f.    Past and future economic losses;

    g.    Presale, prejudgment and post-judgment interest;

    h.    Attorney's fees;

    I.    Costs of suit, expert fees and litigation expenses; and

    j.    All other relief this Honorable Court deems appropriate.

### X. Demand for Jury Trial

46. Plaintiff hereby demands trial by jury to the extent authorized by law.

_____
**FRED A. PHARIS**
of **PHARIS LAW OFFICES**
831 DeSoto Street
Alexandria, LA 71301
Telephone: (318) 445-8266
Fax: (318) 445-5981
email: fpharis@pharislaw.com
LA Bar Roll No. 1536
**ATTORNEY FOR BDC TREE SERVICE, LLC**